IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Kayla Lokey
DEPUTY CLERK

Hafsa Ahmed,                        )
                                    )
                Plaintiff,          )
                                    )
v.                                  )          Civil Action No. 5:26-cv-00020
                                    )
Marco Rubio *et al.*,               )
                Defendants.         )
                                    )

**<u>MEMORANDUM OPINION</u>**

Plaintiff Hafsa Ahmed brings this suit to compel government Defendants Marco Rubio, United States Department of State, and the Bureau of Consular Affairs to complete adjudication of her husband's immigrant visa application. After completing his visa interview in January 2026, Ahmed's husband received a notice of refusal and was informed his application was marked for administrative processing. Defendants argue that the court lacks subject matter jurisdiction to review Plaintiff's claims.

This matter is before the court on Defendants' motion to dismiss Plaintiff's complaint, (Dkt. 6), and Plaintiff's motion for a temporary restraining order and preliminary injunction, (Dkt. 2). For the reasons stated below, the court will grant Defendants' motion, dismiss the complaint, and deny Plaintiff's emergency motion as moot.

## I.    Background[1]

Plaintiff Hafsa Ahmed filed an immediate relative immigration visa petition on behalf of her spouse, Muhammad Shakeel, on February 26, 2024.  (Compl. ¶ 13 (Dkt. 1).)  The National Visa Center deemed the petition documentarily qualified on December 10, 2025, and subsequently transferred the application to the U.S. Embassy in Manama, Bahrain.  (Compl. ¶¶ 14–15; Dkt. 1-5 at 2.)

During the visa processing period, Ahmed experienced "serious pregnancy complications, including cramping, bleeding, severe back pain, and physical activity restrictions."  (Compl. ¶ 16.)  In light of her pregnancy and upcoming due date of January 4, 2026, Ahmed requested an emergency rescheduling of her husband's visa interview, which was originally scheduled at the embassy for February 16, 2026.  (Dkt. 1-6 at 4–5.)  The request was granted and Shakeel's interview was moved up to January 19, 2026.  (Compl. ¶¶ 21–22.)

After Shakeel's interview, his application was refused and marked for "[a]dditional processing."  (Dkt. 1-3 at 2.)  The refusal noted in part:

> A U.S. consular officer has adjudicated and refused your visa application.  Please follow any instructions provided by the consular officer.  If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing.  You will receive another adjudication once such processing is complete.

(Dkt. 1-4 at 2.)  Shakeel "was informed by the consular officer that visa processing could not continue due to categorical policy considerations affecting Pakistani nationals" and that "no individualized eligibility concerns were identified."  (Compl. ¶ 28.)

---

[1] The facts are taken from Ahmed's complaint and attached exhibits and are accepted as true when addressing a motion to dismiss.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).
.

Ahmed gave birth without Shakeel present, and experienced significant delivery complications requiring extended medical recovery.  (*Id.* ¶¶ 34–36.)  As of mid-February, she was still medically unable to return to work and continued to experience financial hardship and challenges with caring for her child by herself.  (*Id.* ¶ 37.)

On February 13, 2026, Ahmed filed a complaint and a motion for a temporary restraining order and preliminary injunction asking the court to declare that Defendants' delay is unlawful and to mandate that Defendants complete the adjudication of her husband's visa application.  (*Id.* at 12; Dkt. 2.)  After the court ordered Defendants to respond, (Dkt. 5), Defendants filed a motion to dismiss and response to the emergency motion on March 12, 2026, (Dkt. 6; Defs.' Br. (Dkt. 7)).  Six days later, Ahmed filed a response to the motion to dismiss and a reply in support of her emergency motion.  (Pl.'s Resp. (Dkt. 9).)  Defendants replied six days after that.  (Defs.' Reply (Dkt. 11).)

## II.     Standard of Review

Challenges to subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) may take one of two forms: (1) a facial challenge, which asserts the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based"; or (2) a factual challenge, which asserts "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  When a defendant raises a facial challenge to subject matter jurisdiction, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). That said, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Sys.*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.    Analysis

Whenever any person applies for an immigrant visa to the United States, the burden of proof is on that person to establish that he is eligible to receive that visa. 8 U.S.C. § 1361. Section 221(g) of the Immigration Nationality Act ("INA") requires a consular officer to refuse the visa application if he finds that the applicant has not met their burden of establishing their eligibility. 8 U.S.C. § 1201(g). Consular officers who refuse applications under § 221(g) may believe that "additional information from sources other than the applicant may help establish an applicant's eligibility" for the visa. U.S. Dep't of State, *Administrative Processing Information*, U.S. Visas, https://perma.cc/78ER-L4AK (last visited Mar. 27, 2026). In such cases, the officer will mark the application for "administrative processing." *Id.* While the officer may reconsider the application later and may conclude that the applicant has

established eligibility, the application is still refused during the pendency of the administrative processing. *See* 9 *Foreign Affairs Manual* 306.2-2(A)(a)(2).[2]

The duration of administrative processing "will vary based on individual circumstances of each case." U.S. Dep't of State, *Visa Appointment Wait Times*, U.S. Visas, https://perma.cc/K9HB-P39S (last visited Mar. 27, 2026). "[T]he relevant statutes and regulations do not state a precise or mandatory deadline" for visa adjudications generally, *see Sarshartehran v. Rubio*, No. 7:24-cv-00633, 2025 WL 1261787, at *2 (W.D. Va. May 1, 2025), or for administrative processing specifically. The State Department recommends that applicants wait at least 180 days from the date of the interview or submission of supplemental documents to make inquiries about the status of administrative processing. U.S. Dep't of State, *Visa Appointment Wait Times*, *supra*. And immigrant visa applicants have one year from the date of refusal to produce additional evidence to establish their eligibility. 9 FAM 306.2-2(A)(a)(1)(c)(i).

Here, Shakeel's visa application was refused by the consular officer in Manama, Bahrain after Shakeel's interview on January 19, 2026. (Compl. ¶¶ 24–26; Dkts. 1-3, 1-4.) The officer placed the application into administrative processing and notified Shakeel that "visa processing could not continue due to categorical policy considerations affecting Pakistani nationals." (Compl. ¶¶ 25, 28.) Ahmed and Shakeel have "fully complied with all immigration requirements" and—as of mid-February—had not received any "requests for additional documentation since the interview." (*Id.* ¶ 39.)

---

[2] The Foreign Affairs Manual is not binding, but the court may rely on it as one persuasive tool in reading the relevant statutes and regulations pertaining to § 221(g) refusals. *See Sarshartehran v. Rubio,* No. 7:24-cv-00633, 2025 WL 1261787, at *2 n.2 (W.D. Va. May 1, 2025).

Ahmed asks the court to compel Defendants to "resume and complete lawful, good-faith, individualized adjudication of [her husband's] immigrant visa application." (*Id.* at 12.) She seeks a writ of mandamus and declaratory and injunctive relief, grounding her claims in the Mandamus Act (codified at 28 U.S.C. § 1361) and the Administrative Procedure Act ("APA") (codified at 5 U.S.C. § 706). (*See id.* ¶¶ 41–62.)

Both statutory schemes limit judicial review of agency inaction. Federal courts may only exercise jurisdiction under the Mandamus Act if an agency has "a clear duty to act." *Lovo v. Miller*, 107 F.4th 199, 216 (4th Cir. 2024). And federal courts have jurisdiction over APA claims that ask the court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), only where a plaintiff "asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original); *see also Lovo*, 107 F.4th at 216 (finding that "federal courts lack[ed] jurisdiction to consider Plaintiffs' APA [§ 706(1)] claim" because USCIS was not required to adjudicate a certain type of waiver application); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365–66 (4th Cir. 2021) (explaining that the plaintiffs' APA § 706(1) claims "must be dismissed for lack of jurisdiction . . . because the agency was not *required* to adjudicate their requests for work authorization"). Accepting Ahmed's allegations as true, the court does not have jurisdiction over her claims.

The parties do not dispute that Shakeel's visa application was refused on January 19, 2026. (Compl. ¶¶ 24, 26 (acknowledging refusal notice); Defs.' Br. at 2–3.) Nor do they

dispute that the refusal was made under § 221(g).  (*See* Pl.'s Resp. at 13[3]; Defs.' Br. at 3 n.2.)

Ahmed argues that "[t]his is not a routine § 221(g) case involving missing paperwork," (Pl.'s

Resp. at 2), but she cannot point to any statute or regulation that *requires* Defendants to

perform any administrative processing at all, let alone complete it in a specific amount of time,

for cases like her husband's.

The implementing regulations for the INA require that a consular officer "issue the

visa, refuse the visa, or . . . discontinue granting the visa."  22 C.F.R. § 41.121(a).  This court

has held in several recent decisions that after a § 221(g) refusal, consular officials are under no

further obligation to take any action to satisfy their obligations under the INA, its

implementing regulations, or any other pertinent statute or regulation.  *See Sarshartehran*, 2025

WL 1261787, at *6; *Rajabi v. Rubio*, No 7:24-cv-00494, 2025 WL 1266961, at *5 (W.D. Va. May

1, 2025); *Shabani v. Rubio*, No. 7:24-cv-00444, 2025 WL 1085075, at *6 (W.D. Va. Apr. 10,

2025).  The court does not stray from those rulings here.

Ahmed does not allege the existence of, nor can the court find, any "clear indication

of binding commitment in the text of the relevant statutes and regulations," *see Sarshartehran*,

2025 WL 1261787, at *5 (cleaned up), that obligates Defendants to place a refused application

into administrative processing in the first place or to complete administrative processing on a

certain timeline once it has begun.  Administrative processing presents an applicant with a

potential avenue towards re-opening a refused application, but it does not create a new

obligation for Defendants to take discrete agency action.

---

[3] Although Ahmed's complaint does not specify that the refusal was pursuant to § 221(g), she appears to acknowledge
this fact in her response brief.  (*See* Pl.'s Resp. at 13.)

Ahmed argues that the circumstances surrounding this particular refusal make this case "materially different from the ordinary post-§ 221(g) cases on which Defendants rely." (Pl.'s Resp. at 7.) But none of the circumstances she points to—that the application was allegedly refused due to the immigrant visa pause for Pakistani nationals, (Compl. ¶¶ 27–28); that the government did not or has not yet identified individualized eligibility concerns or missing documentation, (*id.* ¶ 26); nor that Ahmed requested and received an expedited visa interview for her husband (*id.* ¶¶ 20–23)—change the fact that Shakeel's visa was refused. The court therefore finds that Ahmed does not plausibly allege that Defendants failed to take a discrete agency action that they are required to take, nor that Defendants had any clear duty to act after refusing the application. Accordingly, the court does not have jurisdiction over Ahmed's claims either under the Mandamus Act or the APA.

* * *

The court acknowledges Ahmed's frustration and difficult personal circumstances stemming from the refusal of her husband's visa application. But the court does not have jurisdiction here to compel consular officers to act after they have considered and refused the application, even if Ahmed does not agree with the reasons for the refusal.

### IV.    Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss for lack of subject matter jurisdiction. (Dkt. 6.) Accordingly, the court will also deny as moot Ahmed's motion for a temporary restraining order and preliminary injunction. (Dkt. 2.)

An appropriate Order will issue.

**ENTERED** this 31st day of March, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE